United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE BAY AREA ROOFERS HEALTH & WELFARE TRUST FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EMPIRE CONTRACTING ROOF SERVICE, *et al.*,<br><br>Defendants.<br>_____/ | No. C-10-4196 EMC<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND ATTORNEY'S FEES**<br><br>**(Docket No. 16)** |

Plaintiffs are the Board of Trustees of the Bay Area Roofers Health and Welfare Trust Fund, Pacific Coast Roofers Pension Plan, East Bay/North Bay Roofers Vacation Trust Fund, Bay Area Counties Roofing Industry Promotion Fund, Bay Area Counties Roofing Industry Apprenticeship Training Fund (herein after collectively referred to as "Plaintiffs," or "Trusts"), and Doug Ziegler as trustee. Plaintiffs have filed suit against Empire Contracting Roof Service, Inc. and Gustavo Melendez, individually and doing business as Empire Contracting Roof Service, Inc. and Empire Contracting Roof Service, pursuant to Section 301(c)(1) of the National Labor Relations Act of 1947, *see* 29 U.S.C. § 185(a), and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132. Each Defendant failed to respond to the FAC, and the Clerk of Court entered default against both Defendants on December 2, 2010. *See* Docket No. 12.

Currently pending before the Court is Plaintiffs' motion for default judgment and attorney's fees against Gustavo Melendez d/b/a Empire Contracting Roof Service. Docket No.16.[1]

Having considered the Plaintiffs' briefs and accompanying submissions, the Court hereby recommends that the motion for default judgment be **GRANTED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed suit against Gustavo Melendez, individually and doing business as Empire Contracting Roof Service, Inc. ("Empire") on September 16, 2010 (collectively "Defendants"). Plaintiffs filed their First Amended Complaint ("FAC") on September 27, 2010. On May 20, 2008, Mr. Melendez d/b/a Empire Contracting Roof Service entered into an "Individual Employer Agreement" (Declaration of Sandy Stephenson, ¶ 2, Exh. 2) with Local No. 81 of the United Union of Roofers, Waterproofers, and Allied Workers, AFL-CIO. This agreement incorporated by reference a "Working Agreement" between Local No. 81 and the Associated Roofing Contractors of the Bay Area Counties, Inc. *See* Stephenson Decl., Exh. 2, ¶ 1. The "Working Agreement," in turn, incorporates by reference the Bay Area Roofers Health and Welfare Trust Fund ("The Trust Agreement") which is at the center of this litigation. *See* Exh. 3, Art. XVIII; Stephenson Decl., Exh. 4 (The Trust Agreement with Amendment No. 2 to Article III).

According to the FAC, Empire violated the Working Agreement as well as the Trust Agreement (Stephenson Decl., Exhs. 2, 3) by failing to pay all moneys due thereunder on behalf of defendant's employees to the trust funds in a timely manner. *See* FAC, ¶¶ 1, 5 & Exhs. 3-4. Plaintiffs contend that this breach constitutes a violation of ERISA (29 U.S.C. §§ 1002, *et seq*.) and the National Labor Relations Act of 1947. *See* FAC, ¶ 6. Plaintiffs pray for damages totaling $112,372.86 as well as attorney's fees and costs totaling $1,727.80. *See* Pls.' Mot., ¶ 1.

Each Defendant was served by substituted service on October 7, 2010. After neither responded to the complaint, Plaintiffs requested entry of default, which was entered against both Defendants on December 2, 2010. *See* Docket No. 12. Plaintiffs subsequently filed the pending

---

[1] At the hearing herein, Plaintiffs conceded the contract at issue was only with Mr. Melendez d/b/a Empire Contracting Roof Service, and thus withdrew their motion against the other corporate defendant. Plaintiffs' counsel has advised the Court that Empire Contracting Roof Service, Inc. was suspended in 2006 by the Franchise Tax Board. Carroll Suppl. Decl., ¶ 2.

motion for default judgment on March 2, 2011 and sent it to Defendants via U.S. mail. *See* Docket No. 16.

## II. DISCUSSION

A. Service of Process

In determining whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default judgment is requested." *See Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Under Federal Rule of Civil Procedure 4(h)(1), a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." *See* Fed. R. Civ. P. 4(h)(1). The Federal Rules permit service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Defendant Gustavo Melendez was served by substituted service of process pursuant to Cal. Code Civ. P § 415.20(a). The FAC and summons were left with Paula Perez, a receptionist apparently authorized to receive service of process at Mr. Melendez's usual place of business. *See* Docket No. 8 (proof of service). These documents were also mailed to the same business address on October 12, 2010. The Court therefore concludes that service of process upon Defendant Gustavo Melendez was adequate.

B. Discretionary Factors: The *Eitel* Analysis

As noted above, default was entered by the Clerk of the Court on December 2, 2010. *See* Docket No. 12. After entry of default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *See Aldabe v. Aldabe,* 616 F. 2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim(s); (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th

Cir. 1986). Because default has already been entered in this case, the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Televideo Sys., Inc. v. Heidenthal*, 826 F. 2d 915, 917-18 (9th Cir. 1987). However, the court may conduct hearings or make referrals in order to determine, *inter alia*, accounting or amount of damages. *See* Fed. R. Civ. P. 55(b)(2).

The above *Eitel* factors weigh in favor of default judgment. First, if the motion is denied, Plaintiff would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The sum of money at stake, although requiring sufficient proof by plaintiff, is allegedly in excess of $112,000. *See* FAC, p. 3, ¶ 1. This figure is based on the delinquency of unpaid contributions owed under the Trust Agreement. The amount sought is prescribed and authorized by 29 U.S.C. § 1132(g)(2) (court shall award the plan the unpaid contributions, interest on unpaid contributions, liquidated damages (not in excess of 20% of unpaid contributions), reasonable attorneys fees, costs and other legal or equitable relief as the court deems appropriate).[2]

In addition, because Defendants have not filed an Answer or any other response, there is little to suggest that there is a possibility of a dispute concerning material facts. Absent a response from Defendants, the facts alleged in the complaint are taken as true. Moreover, the motion is supported by documentary evidence and an audit. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). The fifth factor therefore weighs in Plaintiffs' favor.

Furthermore, it is unlikely that Mr. Melendez's default was due to excusable neglect, especially since both the Defendants were served not only the summons and complaint but also the

---

[2] The term "plan" presumably refers to "group health plan," defined as "an employee welfare benefit plan to the extent that the plan provides medical care . . . to employees or their dependents (as defined under the terms of the plan) directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1191b.

4

request for default and motion for default judgment. *See* Docket Nos. 15 and 16. Moreover, Plaintiffs' counsel was in contact with Empire's business manager as recently as March 10, 2011. Counsel discussed with her the need to address the unpaid audit and regular contributions. She said she would speak to Mr. Melendez. Carroll Suppl. Decl., ¶ 3. Thus, the sixth factor also weighs in favor of default judgment.

As to the sufficiency of the complaint and the merits of the plaintiff's substantive claim (the second and third *Eitel* factors), the Court examines the FAC as well as the supporting declarations and the accompanying exhibits. *See* Docket No. 17. These show that Mr. Melendez agreed to the terms and conditions of the following agreements with the United Union of Roofers, Waterproofers and Allied Workers Local Union, No. 81: (1) an "Individual Employment Agreement," effective May 20, 2008 to July 31, 2010; (2) a "Working Agreement" incorporated by reference (*see* Stephenson Decl., ¶ 2, Exh. 2), effective August 1, 2005 to July 31, 2010, and (3) the "Trust Agreement" under which Mr. Melendez would make contributions to the "Bay Area Roofers Health and Welfare Trust Fund" to provide health and welfare benefits for employees (*see* Stephenson Decl., Exh. 2, Art. XVIII). The parties also agreed to amend the Trust Agreement (hereafter the "Revised Trust Agreement") by adding a section specifying liquidated damages and detailed fees associated with delinquent contributions. *See* Stephenson Decl., ¶ 7, Exh. 4 (Amendment No. Two to the Bay Area Health and Welfare Trust Fund). Mr. Melendez also signed an Affirmation Agreement confirming the contract with the Union. Ziegler Decl., Exh. 9.

In support of their motion, Plaintiffs point to the Revised Trust Agreement, which contains an audit provision allowing Plaintiffs the right to audit Defendant's books and records in order to establish compliance with the trust agreement. *See* Stephenson Decl., Exh. 4, Sec. D. Plaintiffs hired an independent auditor, Chuck Ha, employed by J.H. Lee Accountancy Corporation, to perform such an audit. *See* Declaration of Chuck Ha (Docket No. 21). His report states that "while defendants have paid contributions to the plaintiffs trust funds, they have failed to pay contributions on behalf of all hours worked by all employees." *See* Ha Decl., ¶ 2. Mr. Ha calculated the delinquent amount.

1    Plaintiffs properly contend that this failure to pay violates the terms of the governing plans in
2 violation of 29 U.S.C. § 1145 such that "a civil action may be brought by a participant or beneficiary
3 . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of
4 the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C.
5 1132(a)(1)(B). These allegations are sufficient to establish Plaintiffs' substantive ERISA claim
6 against Defendant Melendez.
7    Taking into account all of the *Eitel* factors, the Court recommends that the motion for default
8 judgment against Mr. Melendez be granted.

C.   Damages

   Because default judgment is warranted, the Court must determine what damages are appropriate. Plaintiffs have the burden of "proving up" their damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit."). In their motion for default judgment, Plaintiffs ask for (1) employee benefit contributions, liquidated damages and interest based on an audit for the period from June 1, 2008 through December 31, 2009, (2) unpaid amounts from March 2010 through November 2010, and (3) attorney's fees and costs. *See* Pls' Mot., at 3, 6; *see also* FAC at 4 (prayer for unpaid contributions and bonds, liquidated damages, interest, attorney's fees, costs, and an injunction enjoining defendants from further violating the terms of the trust agreements).

   The Court must award plan fiduciaries prevailing on a claim asserting a violation of the employer's obligation under 29 U.S.C. § 1145:  (1) any unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as a specified in the plan (generally not to exceed 20 percent of unpaid contributions), (4) reasonable attorney's fees and costs, and (5) other appropriate legal or equitable relief.  *See* 29 U.S.C. § 1132(g)(2).

1.   Unpaid Contributions

   Plaintiffs assert that Defendant failed to make the full contributions required for the months of June 2008 to December 2009 and for the months of March through November 2010. *See* Pls'

6

Mot. at 3, ¶ 1. The total amount allegedly unpaid is $86,140.78. To support this total, Plaintiffs provide audit results and written documentation of the delinquency. *See* Ha Decl., Exh. 1 (audit from June 2008 to December 2009 finding $70,766.78 in unpaid contributions); Stephenson Decl., Exhs. 5, 6 (spreadsheet for March to November 2010 finding $15,374.00 in unpaid contributions).

In particular, the audit for the months of June 2008 through December 2009 was performed by Mr. Ha. *See* Ha Decl., ¶ 2. Mr. Ha provided twenty-seven pages of individualized employee records which details hours worked and the corresponding amount of fringe benefits derived from the labor. *See* Ha Decl., Exh. 1. He found the total owed for this period is $70,766.78 (interest not included). With respect to the period from March to November 2010, Plaintiffs point to nine months of reports voluntarily submitted by defendants. *See* Stephenson Decl., ¶ 6, Exh. 6. Each contains monthly "fringe totals" owed for each month (March/$1729.00, April/$845.00, May/$1,456.00, June/$2,054.00, July/$2,600.00, August/$2,080.00, September/$2,158.00, October/$1,612.00, and November/$840.00). The total for these months is $15,374.00. *See* Stephenson Decl., Exh. 5 ("contribution still owed" excluding audit amount adds up to $15,374.00). These calculations, supported by individual payroll documents and reviewed by Sandy Stephenson, an account executive of United Administrative Services (administrators for plaintiff Trusts). *See* Stephenson Decl., ¶ 1.

Based on this evidence, the Court finds that Plaintiffs have met their burden of proving unpaid contributions for the above time periods. The total amount owed is $86,140.78.

2. <u>Liquidated Damages</u>

In addition to unpaid contributions, Plaintiffs seek liquidated damages pursuant to the Trust Agreement. More specifically, Plaintiffs request liquidated damages for unpaid contributions from June 2008 through December 2009 and from March through November 2010. Plaintiffs contend they are entitled to liquidated damages pursuant to the Trust Agreement, Amendment No. 2 to Art. III, paragraph C(2)(b), which provides for liquidated damages (after a lawsuit has been filed) calculated as,

> (i) 20% of the delinquent contributions as of the date of delinquency for each trust fund required to be reported on the same employer contribution report form, or;

> (ii) interest in the amount of the delinquent contributions for each trust fund required to be reported on the same employer contribution report form until the dates they are paid in full at the rate referred to in paragraph (3).

Stephenson Decl., Exh. 4, Sec. (C)(2)(b). The Trust Agreement comports with 29 U.S.C. § 1132(g)(2)(C)(ii) which provides for liquidated damages in ERISA actions in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount owed. Thus, the requested liquidated damages of 20% of unpaid contributions is proper. With respect to liquidated damages for the unpaid contributions, the Court therefore recommends a liquidated damage award of $17,228.15 (20% of $86,140.78 in total unpaid contributions). *See* Stephenson Decl., Exh. 5.

3. Interest

Plaintiffs also request interest accrued for unpaid contributions at the legal rate from the dates on which the principal amounts due accrued. Pls' Mot. at 6, FAC, ¶ 7. The court may award interest on unpaid contributions, as determined "by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *See* 29 U.S.C. § 1132(g)(2). The Trust Agreement provides for prejudgment interest at the Underpayment Rate prescribed by the IRS under Section 6621 of the Internal Revenue Code). *See* Stephenson Decl., ¶ 8. Plaintiffs calculated interest for each month from the due date of the 10th of the month following the month the work was done to April 13, 2011 (for contributions remaining unpaid). *See* Stephenson Decl., Exh. 5. According to the Stephenson Declaration, the total amount owed is $9,003.93 based on a rate of 4%. *See* Stephenson Decl., Exh. 5.

Internal Revenue Code Section 6621(g)(2) generally provides that the quarterly interest rate for underpayment is the federal short-term rate for the first month of that quarter plus three percentage points. *See N. California-Northern Nev. Sound & Communs. Emple. Benefit Trust Funds v. Anderson Audio Visual - San Francisco, Inc.*, 2007 U.S. Dist. LEXIS 16222 (N.D. Cal. Feb. 21, 2007). The interest rates through Q1 2011 are available at Rev. Rul. 2010-31, 2010-52 I.R.B. 10-11 (Dec. 27, 2010), available at http://www.irs.gov/newsroom/article/0,,id=232163,00.html. Plaintiffs' assertion of 4% is actually below the IRS Underpayment Rate for many of the quarters during the

8

accrual period; however, it exceeds the 3% rate in place beginning the first quarter of 2011. The Court nonetheless recommends an award of prejudgment interest as requested, since the total requested in the Stephen Declaration is less than the full amount which would otherwise be owed were the full Underpayment Rate applied throughout the period. However, the current rate of 3% (which comes to $7.08 per day) will be applied to accrued dates beyond April 13, 2011, the date through which Plaintiffs seek the $9,003.93 in interest.

### 4. Attorney's Fees and Costs

Finally, the Trust Funds ask for attorney's fees and costs incurred. If plaintiffs secure a judgment in favor of the plan, they are entitled to such fees and costs. *See* 29 U.S.C. §§ 1132(g)(1) ("[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by defendant."). Additionally, Article III, Paragraph E of the Trust Agreement provides that the employer shall reimburse the Trusts "for all reasonable attorney's fees, audit fees, court costs . . . and all other reasonable expenses of whatever nature incurred in connection with such suit or claim, including any and all appellate proceedings therein." *See* Stephenson Decl., Exh. 4, Art. III, ¶ E. Plaintiff's counsel has provided a declaration substantiating the request for $802.80 in costs ($350.00 filing fee + $356.80 for service of process fees + $96.00 to effect service of a Subpoena Duces Tecum and Notice of Deposition) and $925.00 in attorney's fees (5 attorney hours at $185/hour). *See* Carroll Decl., ¶¶ 2, 5.

The Court finds this request to be adequately documented and reasonable under the circumstances. Accordingly, the Court recommends that Plaintiffs' request for attorney's fees and costs be granted in the amount of $1727.80.

///
///
///
///
///
///

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's motion for default judgment against Defendant Gustavo Melendez be granted and that damages totaling $**114,100.66** be awarded to Plaintiffs, consisting of: $86,140.78 for unpaid contributions; $17,228.15 for liquidated damages; $925.00 for attorney's fees; $802.80 for costs and $9,003.93 in prejudgment interest plus $7.08 per day for each day after April 3, 2011.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: April 26, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge